| | | | |
|---|---|---|---|
| R. V. YOUNG, | ) | | |
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | No. 2:03-0040 | |
| | ) | (Crim. No. 2:00cr0002) | |
| | ) | Judge Brown | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**To: The Honorable Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that the respondent's motion to dismiss (Docket Entry No. 166) be **GRANTED**, that the amended motion (Docket Entry No. 34) be **DENIED**, that this action be **DISMISSED** with prejudice, that any appeal **NOT** be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith, and that a certificate of appealability (COA) **NOT** issue on any claim.

## INTRODUCTION
## AND
## BACKGROUND

The Grand Jury returned a ten-count indictment against the movant: five counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and five counts of the use of a firearm in the commission of the robberies in violation of 18 U.S.C. § 924(c). *United States v. R.V. Young*, No. 2:00cr00002 (M.D. Tenn 2000)(Trauger, J.)(Docket Entry No. 1).[1] The movant was tried by a jury, found guilty on all counts, and sentenced to 87 months on each of the armed bank robbery convictions, to run concurrently, and 1,020 months for the firearms convictions, those sentences to

---

[1] References to docket entries in the movant's criminal case use the convention "(Crim. Docket Entry No. X)," where "X" is the docket entry in the criminal record to which reference is being made.

run consecutively with the armed bank robbery sentences. (Crim. Docket Entry No. 47-48)

The movant appealed. (Crim. Docket Entry No. 49) The only issue raised on appeal was whether the trial court erred in admitting evidence of an unrelated offense committed by the movant. (Docket Entry No. 13, Attach. Affidavit, ¶ 6, pp. 2-3) The Sixth Circuit affirmed the judgment of the trial court on August 12, 2002. (Crim. Docket Entry No. 61) The movant did not file a petition for a writ of *certiorari* in the United States Supreme Court. (Crim. Docket Entry No. 63, p. 1)

The movant filed a *pro se* motion under 28 U.S.C. § 2255 in district court on April 21, 2003. (Docket Entry No. 1) On May 8, 2003, the U.S. Attorney was directed to respond to the motion, and the Federal Public Defender was directed to appoint counsel. (Docket Entry No. 3)

The movant filed a first amended motion through counsel on September 5, 2003. (Docket Entry No. 9) In it, the movant set forth a twenty-seven part ineffective assistance of counsel claim, as well as claims that there was improper *ex parte* communication between the trial judge and defense counsel, that the jury charge was unconstitutional on its face, and that his sentence enhancement under 18 U.S.C. § 924(c)(1)(C) was improper.

The movant filed a second "amended and supplemental" motion on October 4, 2004 in which he raised the following new claims: 1) defense counsel's representation was deficient for failure to raise a *Daubert* challenge under Rule 701, Fed. R. Crim. P. (Docket Entry No. 34, ¶ II.10.F.vi, p. 6); 2) using a prior conviction to enhance his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004) (Docket Entry No. 34, ¶ II.13, p. 9); 3) the "second and subsequent" language in 18 U.S.C. 924(c)(1)(C) creates a "separate substantive offense" that must be included in the § 924(c) charge and presented to the jury before a defendant can be sentenced for a second and subsequent conviction under § 924(c) (Docket Entry No. 34, ¶ II.13, p. 9); 4) the prosecution suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995) (Docket Entry No. 34, ¶ II.14, p. 9); and 5) the movant's sentence violated *Castillo v. United*

2

*States*, 530 U.S. 120 (2000), because his indictment and jury form did not identify what type of firearm or dangerous weapon was used in the offenses (Docket Entry No. 34, ¶ II.14, p. 9).

The government moved to dismiss the new claims under the doctrine of "relation back." (Docket Entry No. 35)  The district court dismissed claims 2), 3), and 5) above, but directed the government to respond to claims 1) and 4).  (Docket Entry No. 39)

The government filed its response to the second amended motion on January 7, 2005 (Docket Entry No. 41), the movant replied (Docket Entry No. 48), and the government filed a subsequent response (Docket Entry No. 51)  Thereafter, the court entered an order denying the movant's non-*Brady* claims, including all of his ineffective assistance of counsel claims, but directed that discovery proceed with respect to the movant's *Brady* claim.  (Docket Entry No. 53)  In a later order, the district court reinstated the movant's ineffective assistance claims.  (Docket Entry No. 91)  The movant had every opportunity to file a new amended motion for *habeas corpus* relief, but declined to do so.  (Docket Entry No. 158)

On July 31, 2008, the government filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.  (Docket Entry No. 166)  The movant filed his response (his response/the movant's response) under seal on December 5, 2008.  (Docket Entry No. 182)  The respondent's motion to dismiss was referred to the undersigned on December 12, 2008.  (Docket Entry No. 183)  Thereafter, the government filed a reply to the movant's response.  (Docket Entry No. 186)

## II.  ANALYSIS

To prevail on a § 2255 motion, the record must reflect an error of constitutional magnitude that had a substantial injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Pleadings filed by parties proceeding *pro se* are to be construed liberally by the courts.  *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

### A.  Applicable Standard of Review

3

The government filed his motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. However, the government relies on matters outside of the pleadings to support its motion. Because the government relies on matters outside of the pleadings, the respondent's motion to dismiss must be treated as a motion for summary judgment.

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law."[2] Rule 56(c), Fed. R. Civ. P., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Id*. at 249-50. Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001), *cert. denied*, 534 U.S. 896 (2001).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof . . . ." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact" then summary judgment should be denied. *Id*. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of

---

[2]   **The undersigned notes that his criminal defense counsel attests that the movant admitted to having committed 3 of the 5 robberies for which he was convicted. (Docket Entry No. 168, ¶ 6, pp. 2-3; Docket Entry No. 169, ¶ 6, p. 3)  The movant, on the other hand, states repeatedly in his affidavit that he never admitted to committing any of the crimes. (Docket Entry No. 180, Ex.A)  Under the law pertaining to summary judgment, the movant's affidavit establishes a genuine issue of material fact that would warrant an evidentiary hearing. As will be seen, however, the undersigned's analysis of the movant's claims does not rely on whether or not the movant admitted his involvement in any of the robberies.**

4

evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to [relief] on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)(citing *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(quoting *Anderson*, 477 U.S. at 252)

### B. Movant's Ineffective Assistance Claims

Attorney Joseph Edwards was lead defense counsel in the movant's criminal case. (Docket Entry No. 168, ¶ 2, p. 1) Michael Knowlton was co-counsel. (Docket Entry No. 169, ¶ 5, pp. 2-3)

To prevail on a claim of ineffective assistance of counsel, the movant must show deficient performance and prejudice. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). The prejudice element requires the defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The determinative issue is not whether

5

petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*), *cert. denied*, 508 U.S. 975 (1993)).

## 1. Alleged Failure to Force the Movant to Accept the Government's Plea Agreement

In his memorandum, the movant asserts that defense counsel were ineffective for not forcing him to accept the government's offer to settle the case. (Docket Entry No. 180, pp. 6-8) The government argues that this claim is time barred. (Docket Entry No. 186, p. 2)

Although the movant filed his original motion within the AEDPA's one-year limitations period, he did not raise this particular claim until he filed his response to the government's motion to dismiss on July 31, 2008, more than five and one-half years after the AEDPA's limitations period had run.[3] The AEDPA's one-year limitations period is not tolled during the pendency of a federal *habeas* proceeding. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Neither does "[a]n amended habeas petition . . relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ both in time and type from the original pleading . . . ." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Although it is clear from the record that this claim is untimely by several years, the one-year limitations period expressed in § 2244(d)(1) does not operate as a jurisdictional bar to *habeas corpus* petitions – the limitations period may be equitably tolled under exceptional circumstances. *Dunlap v. United States*, 250 F.3d 1001, 1004, 1004 n. 1, 1005 (6th Cir. 2001). However, "[t]he petitioner bears the ultimate burden of persuading the court that he . . . is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)(citing *Dunlap*, 250 F.3d at 1001).

---

[3] The movant's case became final on direct review on November 11, 2002, when he did not file a petition for a writ of *certiorari* in the United States Supreme Court.

6

The movant has not responded to the government's argument that this claim is untimely, even though he has had more than three months to do so. Accordingly, the undersigned concludes that equitable tolling is not warranted in this instance.

For the reasons explained above, this claim is time-barred for purposes of federal *habeas corpus* review. It should be denied as such.

## 2. Witnesses Interviews

The movant asserts that defense counsel "conducted no interviews with the bank tellers involved in the robberies concerning their ability or lack of ability to identify [the movant] as the masked robber." (Docket Entry No. 34, ¶ II.10.A.i, p. 3)

Relying on the affidavits of defense counsel (Docket Entry No. 168-169), the government counters that defense counsel interviewed three of the employees from two of the banks, and observed the reaction of two other witnesses during a lineup in which the movant appeared. (Docket Entry No. 172, ¶ I.A, pp. 10-12) The government also avers that it was:

> evident to [defense counsel] from their discussions with Agent [Douglas] Whitten prior to trial, from the statements made by the bank tellers who participated in the line-up, and from the response filed by the government to Mr. Edwards' motion *in limine* that none of the victim bank tellers had sufficient opportunity to observe [the movant] without his stocking mask to identify him based upon his facial features.

(Docket Entry No. 172, ¶ I.A, p. 11)

In his response, the movant concedes that defense counsel interviewed three of the tellers, and observed two others, but suggests that defense counsel were ineffective because they did not interview the other witnesses. (Docket Entry No. 180, ¶ A, pp. 8-11) The movant maintains that "it is entirely reasonable to assume . . . the probability of a different outcome," and the fact that defense counsel did not interview all of tellers "undermine[s] the confidence" in his convictions. (Docket Entry No. 180, ¶ A, p. 11)

7

Assuming for the sake of argument that defense counsel ought to have interviewed the other tellers, the movant has made no effort whatsoever to show that/or how he was prejudiced by defense counsel's failure to do so. He argues only that "it is entirely reasonable to assume" that he was prejudiced. Such speculation is insufficient to warrant *habeas corpus* relief. *See Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004); *Norris v. Schotten*, 146 F.3d 314, 33 (6th Cir. 1998); *Turpin v. Kassulke*, 26 F.3d 1392, 1401 (6th Cir. 1994).

The movant cannot establish both halves of the two-part test under *Strickland* with respect to this claim. Therefore, this claim should denied.

### 3. Failure to Request Investigative and Expert Assistance

The movant asserts that defense counsel were ineffective because they "failed to request investigative and expert assistance that was necessary and available under the Criminal Justice Act." (Docket Entry No. 34, ¶ II.10.Aii, p. 3)

The government argues that defense counsel "did not believe that any additional investigative or expert assistance was needed," because defense counsel Edwards conducted his own investigations. (Docket Entry No. 172, ¶ I.B, pp. 12-13)

The movant couches his response in terms of the number of witnesses that defense counsel interviewed. (Docket Entry No. 180, ¶ B, pp. 11-13) According to the movant, "an investigator would have been helpful," failure to request investigative assistance "f[ell] below the standard set for criminal defense attorneys," and "because identity was the crucial issue in the case," "failure to avail oneself of the applicable resources is sufficient to undermine the confidence in the outcome" of the trial. (Docket Entry No. 180, ¶ B, pp. 12-13)

Assuming for the sake of argument that defense counsel ought to have obtained investigative assistance to interview additional witnesses, the movant once again fails to specify how he was prejudiced at trial because the rest of the witnesses were not interviewed. Claims that investigative

8

assistance "would have been helpful," that defense counsel's failure to request investigative assistance "falls below the standard set for criminal defense attorneys," and that failure to obtain investigative assistance "undermine[s] the confidence in the outcome" of the trial are conclusory arguments. Conclusory arguments do not provide a basis for *habeas corpus* relief. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

The movant cannot establish both halves of the two-part test under *Strickland* regarding this claim. Accordingly, the claim should be denied.

### 4. Failure to Retain Expert Forensic Assistance

The movant asserts that defense counsel "failed to independently obtain forensic analysis to test or rebut the government's evidence . . . includ[ing], but not limited to,[4] identification and audio experts, firearms, fabric and fluid stain analysis." (Docket Entry No. 34, ¶ II.10.Aiii, p. 3)

The thrust of the movant's argument concerning the "audio forensics" expert is that the movant's voice was "key" to identifying him as the robber. (Docket Entry No. 180, ¶ C, pp. 13-14) The movant maintains that, had an "audio forensics" expert been retained, the expert would have testified that the movant did not have "distinctive" voice. (Docket Entry No. 180, ¶ C, pp. 13-14)

The movant makes no effort to explain how the testimony of an "audio forensics" expert could/would have been used to rebut the testimony of lay witnesses who characterized the movant's voice as "distinctive" based on having heard the robber's voice first hand. Rather, the movant argues that, had an "audio forensics" expert been retained, he "would have testified to the contrary to what Mr. Edwards [lead defense counsel] now asserts" in his affidavit filed in this *habeas* action, i.e., that the movant has a "distinctive" voice. (Docket Entry No. 180, ¶ C, p. 14) Defense counsel's

---

[4] Vague expressions such as "but not limited to" are inconsistent with Rule 2, Rules – Section 2255 Proceedings, which provides that "[t]he motion must . . . specify all the grounds for relief available to the moving party . . . [and] state the facts supporting each ground . . . ." *Id.* §§ (b)(1)-2). The court is not required to conjure up un-pled claims implied by such vague expressions, nor will it read into such open-ended claims that additional claims exist.

characterization of the movant's voice in this proceeding is irrelevant to the movant's trial.

For the reasons stated above, the movant has failed to establish that defense counsel's representation was deficient for not retaining an "audio forensics" expert. As to prejudice, the movant writes: "Unfortunately we will never know." Again, vague statements such as this are insufficient to establish prejudice.

With respect to the other areas in which he claims defense counsel ought to have retained expert assistance, the movant argues only that "[n]either [defense attorney] [wa]s an expert in these areas," and "[t]o conclude [*sic*] based upon their own comparison falls below the standard expected of criminal defense lawyers." (Docket Entry No. 180, ¶ C, p. 14) For reasons previously explained, *supra* at p. 9, this argument is conclusory and, as such, it is insufficient to establish deficient representation. As to prejudice, the movant's argument is as follows:

> Likewise, we do not know of the prejudice, but can assume that had a defense expert contradicted the government's expert the failure to call such an expert would have affected the outcome of the case.

(Docket Entry No. 180, ¶ C, p. 14) The movant's first attorney in this action, Mr. Thorensen was allowed to have much of the evidence in the case examined by an expert. (Docket Entry No. 110) Following that examination, however, the movant made no effort to modify his motion, or to show that his expert reached any conclusion that would benefit him. Especially given this examination, this claim is totally without merit.

The movant has failed to establish either half of the two-part test under *Strickland* in this claim. Therefore, this claim should be denied.

### 5. Failure to Investigate Other Suspects

The movant alleges that defense counsel were ineffective because they "failed to investigate the allegations that the FBI had another suspect that had been tentatively identified in a photo array by one of the bank tellers." (Docket Entry No. 34, ¶ II.10.A.iv, p. 4) According to the movant,

10

"[t]his was significant in that the other suspect was identified closer in time to the bank robberies" than when the movant was identified, and that the other suspect "had failed a FBI administered polygraph test including questions about the robberies of which [the movant] was convicted." (Docket Entry No. 34, ¶ II.10.A.iv, p. 4)

Relying on the affidavits of defense counsel (Docket Entry No. 168, ¶ 25, pp. 11-13; Docket Entry No. 169, ¶ 22, pp. 11-13), the government argues that defense counsel did, in fact, investigate the two other suspects, John Wayne Breeding and Bobby Glenn Burgin, but that they abandoned those lines of investigation for good cause. (Docket Entry No. 172, ¶ I.D, pp. 15-16)

In his response, the movant does not dispute the affidavits of defense counsel regarding actions that they took to investigate Breeding and Burgin, or defense counsel's reasons for not investigating Breeding and Burgin further. (Docket Entry No. 180, ¶ F, p. 15 & Ex. A, pp. 12-13, 19) Instead, the movant asserts that defense counsel "should have . . . investigated . . . Breeding further." (Docket Entry No. 180, ¶ D, p. 15)

The law is well established that the reviewing court's scrutiny of defense counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689. Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *accord Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004); *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). The court also must not indulge in twenty-twenty hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987).

Defense counsel's actions in investigating other suspects, as set forth in their individual affidavits, are credible, reasonable, and undisputed. The reasons provided by defense counsel for

11

not investigating Breeding and Burgin further also are credible, reasonable, and undisputed. Therefore, the undersigned concludes that defense counsel's representation was not deficient with respect to their investigation of Breeding and Burgin. To conclude otherwise, would require just the sort of second-guessing that *Strickland* is intended to prevent.

The undersigned also concludes that the movant was not prejudiced because defense counsel did not pursue their investigations of Breeding and Burgin further. According to defense counsel's undisputed affidavits, Breeding, who failed a polygraph about the first robbery, was in custody when the other four robberies were committed. Burgin, on the other hand, was a suspect in the third robbery – the February 17, 1998 robbery of the First Tennessee National Bank in Cookeville – but when he was not identified as the robber, law enforcement ceased to view him as a suspect. Apart from the naked assertion that further investigation of Breeding and Burgin "could have resulted in a finding of not guilty," the movant has failed to provide any factual allegations or argument that establish a reasonable probability that, had evidence of the facts noted above been presented to the jury, the movant would have been found "not guilty." For reasons previously explained, this unsupported claim is conclusory.

The movant has failed to establish either half of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### 6. The Movant's Alibi Claim

The movant alleges that defense counsel "failed to adequately investigate [his] alibi claim for a specific date on which one of the robberies of which he was convicted was committed." (Docket Entry No. 34, ¶ II.10.A.v, p. 4) The movant's alleged alibi was that he was delivering goats out of state for Mr. Donald Richards on March 11, 1998, the date that the Regions Bank in Livingston, Tennessee was robbed. (Docket Entry No. 180, ¶ E, pp. 15-16)

Relying on defense counsel's affidavits (Docket Entry No. 168, ¶¶ 15, 26, pp. 4-5, 13;

12

Docket Entry No. 169, ¶¶ 14, 23, pp. 5-6, 13), the government argues that defense counsel "thoroughly investigated this potential alibi claim . . . ." (Docket Entry No. 172, ¶ I.E, p. 17). In their affidavits, defense counsel both assert that the receipts at issue did not show the name of the person who made the trip, an assertion borne out by the record in the movant's criminal case (Crim. Docket Entry No. 70), and that Richards advised them at the time of trial that he believed that the receipts at issue were for a trip made by someone other than the movant (Docket Entry No. 168, ¶ 15, pp. 4-5; Docket Entry No. 169, ¶ 14, pp. 5-6).

Relying on Richards's affidavit (Docket Entry No. 180, Ex. B), the movant argues in his response that the alibi placed him in another state at the time of the March 11, 1998 robbery. In his affidavit, Richards asserts that he was "willing to testify that the receipts and the trip sheet were directly related to a trip that Mr. Young took for me to deliver goats."[5] (Docket Entry No. 180, Ex. B, ¶ 7, p. 1) Because Richards' affidavit contradicts those executed by defense counsel regarding their decision not to pursue the alibi defense, the undersigned turns to whether the movant can establish that he was prejudiced by defense counsel's decision not to pursue the alibi.

The question of prejudice boils down to this. Is there a reasonable probability that the jury would have decided the movant's guilt or innocence of the March 11, 1998 robbery of the Regions Bank differently if Richards had testified in June, 2000, given that: 1) Richards would have testified more than two years after the trip at issue; 2) there was nothing on the receipts that linked the movant to the trip; 3) the receipts were kept in a cardboard box with all of the other trip receipts for

_____

[5] Although Richards states in his November 3, 2008 affidavit that he was willing to testify at trial that the movant made the trip at issue (Docket Entry No. 190, Ex. B, ¶ 7, p. 1), in a "Status Report" filed on April 9, 2003, attorney Edwards wrote that Richards "told Mr. Knowlton . . . that he could not testify that Mr. Young was the driver on the trip in question," and during a recess at trial, that he "unequivocally stated that he would not testify that Mr. Young was the driver on that goat delivery trip" (Crim. Docket No. 69, p. 1). Defense counsel's recollection of Mr. Richards' inability to testify that the movant made the trip is supported by the affidavit of Special Agent Whitten, in which he wrote that Mr. Richards "could not be certain" that the movant made the trip in question." (Docket Entry No. 15, ¶ 4, p. 2).

Case 2:03-cv-00040   Document 189   Filed 03/13/09   Page 13 of 48 PageID #: 1053

1998;[6] 3) the movant was not the only driver who delivered livestock for Richards; 4) the movant had made "15 to 20 trips . . . to various places to deliver or pick up livestock" for Richards; 5) there was no cause to question who made the March 11, 1998 until after the movant was identified for the Regions Bank robbery on August 11, 1999 – seventeen months, and numerous deliveries, after the fact. Or would the jury have, in the absence of any evidence to corroborate Richards' memory of events under the circumstances described, credited the substantial evidence, discussed *infra*, that established the movant's identify as the Regions Bank robber.

Given the foregoing, the undersigned concludes that, even if Richards had testified, there was not a reasonable probability that the jury would have decided the question of guilt or innocence differently. Accordingly, the movant has failed to establish that he was prejudiced because Richards was not called to testify.

As reasoned above, the movant cannot establish both parts of the two-part test under *Strickland*. Accordingly, this claim should be denied.

---

[6] In the "Status Report" identified in n. 5 *supra*, attorney Edwards characterized the travel records as kept in a "cardboard box . . . which contained all of the trip reports for the year . . . ." (Crim. Docket Entry No. 69, p. 1)

14

**7. Failure to Investigate, Interview, or Introduce Lay Witnesses**

The movant alleges that defense counsel "failed to investigate, interview or introduce lay witnesses who could have rebutted prosecution lay testimony as to the identification of 'the movant]." (Docket Entry No. 34, ¶ II.10.A.vi, p. 4) This claim pertains to the testimony of Donna Goss who identified the movant from security photographs taken at two of the robberies. (Docket Entry No. 180, ¶ F, pp. 16-19)

Relying on the affidavits of defense counsel (Docket Entry No. 168, ¶ 27, pp. 13-15; Docket Entry No. 169, ¶ 24, pp. 13-15), the government argues that the only witnesses who could have testified that the photographs about which Goss testified were not the movant were "intimate friends or family members . . . who would have had an obvious bias in his favor." (Docket Entry No. 172, ¶ I.F, p. 18) The government argues further that the trial strategy was that it was better not to put on a weak defense that would potentially undercut the defense's argument that the government failed to meet its burden of proof. (Docket Entry No. 172, ¶ I.F, p. 18) Finally, the government argues that defense counsel cross-examined Goss effectively about her ability to identify the masked robber from the security photographs, and her failed romance with the movant to show possible bias against him. (Docket Entry No. 172, ¶ I.F, pp. 17-19)

In his response, the movant argues that Judy Radford, the movant's former live-in girlfriend, Randy Todd Young, the movant's son, and Willie Mae Young, the movant's mother, would have testified, had they been called, that the photographs of the masked robber could not have been the movant because the movant "would never ha[ve] worn overalls with a permanent stain on them . . . . [that he] had very neat hair that could never be described as bushy . . . [that he] always appeared clean shaven . . . [that he] always kept his shirt tucked in and . . . [that he] always appeared extremely neat." (Docket Entry No. 180, ¶ F, p. 19) The movant has submitted the affidavits of the afore-named individuals. (Docket Entry No. 180, Ex. C-E)

15

The affidavits of those identified above are insufficient to warrant relief. First, the affidavits reflect, just as defense counsel noted, the testimony of "intimate friends or family members . . . who have an obvious bias in [the movant's] favor." This alone constitutes at least a tactical reason for not calling them to testify about something as easily altered as grooming and dress. Second, although the affidavits speak in generalities about the movant's appearance and grooming habits, they do not address themselves to the security photos or testimony at issue. More critically, the affiants do not assert that the security photographs at issue are not the movant.

For the reasons explained above, the movant has failed to establish either half of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### 8. Ineffective Assistance Claims Related to the 1999 Line-Up

The thrust of this ineffective assistance claim is three-fold: 1) defense counsel failed to object to the in-court identification of the movant based on the lineup in question ( Docket Entry No. 34, ¶ II.10.B.i, p. 4); 2) defense counsel failed to request a cautionary instruction when a witness identified the movant at trial by sight when the same witness had previously identified him primarily by his voice (Docket Entry No. 34, ¶ II.10.B.ii, p. 4); 3) and defense counsel failed to otherwise participate in the lineup in any meaningful way as to the techniques used by the government (Docket Entry No. 34, ¶ II.10.B.iii, pp. 4-5).

### a. Failure to Object to the In-Court Identification of the Movant Based on the 1999 Lineup

The movant asserts that defense counsel were ineffective because "they failed to object to an in-court identification of [the movant] based upon [an] overly suggestive line-up" conducted on August 11, 1999. (Docket Entry No. 34, ¶ II.10.B.i, p. 4) The movant does not identify what witness(es) made the in-court identification at issue, he provides no argument in support of this claim, he provides no references to the record, and he provides no citation to relevant authority. For

16

these reasons, this claim is conclusory. As previously established, conclusory claims do not provide grounds for federal *habeas corpus* relief. Although this claim is subject to dismissal because it is conclusory, the undersigned will address it to the extent possible nevertheless.

The crux of the movant's argument is that the 1999 lineup was unduly suggestive because he was the only one in the lineup with gray hair. (Docket Entry No. 180, ¶ G, pp. 19-20) From this, the undersigned concludes that this claim pertains to the testimony of Carr and Emerton, the two tellers on duty during the March 11, 1998 robbery of the Regions Bank in Livingston, Tennessee. The record shows that Carr told the FBI that the robber had gray sideburns (Docket Entry No. 180, Ex. (unnumbered)), and Emerton told the FBI that the robber had gray hair hanging out behind the cap that he was wearing (Docket Entry No. 180, Ex. F).

"Due process 'prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification.'" *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir.2001)(quoting *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir.2000)). "A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir.1994)(quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986)(quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968))). A two-part test is employed in assessing the validity of a pretrial identification. *Ledbetter*, 35 F.3d at 1070. The court must first consider whether the procedure was unduly suggestive. *Id*. at 1070-71 (citing *Thigpen*, 804 F.2d at 895). The movant bears this burden of proof. *Id*. at 1071 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992)). If the procedure is determined to be unduly suggestive, the court then proceeds to the second step of the analysis to determine whether the pretrial identification was nonetheless reliable under the totality of the

17

circumstances. *Crozier*, 259 F.3d at 510 (citing *Ledbetter*, 35 F.3d at 1070).

Special Agent Whitten, the FBI agent who coordinated the 1999 lineup, testified at trial as follows with respect to the actual composition of the lineup:

> [A]fter we had obtained approximately three people, three to four people that fit [the movant's] general description in terms of age, height, weight, hair, eye color, things of this nature . . . [I] got Mr. Bly, who's the jail administrator, to talk to his employees, and they were able to find us enough people to finish out the lineup who had the same general physical characteristics as [the movant].
>
> What we didn't want was anybody who, obviously, didn't match, was much younger or much older, much taller, much shorter. We wouldn't have wanted somebody with red hair, basically trying to get as close as we could to an accurate honest lineup with the people that we had to work with there in the jail system.

(Crim. Docket Entry No. 53, pp. 331-32) The movant does not allege that the other participants in the lineup did not possess the same general physical characteristics with the movant, *e.g.*, height, weight, age, etc. On the contrary, the photographs of the actual lineup shows that it was, in fact, properly structured and not unduly suggestive. (Docket Entry No. 15, Attach. B)

Having determined above that the lineup was not unduly suggestive, there is no need to proceed to the second part of the two-part *Ledbetter* test. The undersigned does so for the sake of completeness.

Notwithstanding Carr's reference to gray sideburns in her statement to the FBI, and her two passing references on direct examination at trial to the robber's gray sideburns (Crim. Docket Entry No. 53, pp. 172-73), Carr testified that she identified the movant at the lineup "[b]y voice. Not by sight. By voice." (Crim. Docket Entry No. 53, p. 181) On cross-examination, Carr replied "Right" when defense counsel asked, "the only way that you were able to identify my client . . . was by voice, is that right?" (Crim. Docket Entry No. 53, p. 183)

In her statement to the FBI, Emerton also spoke of the robber's gray hair. However, she

18

testified at trial that, "the minute I heard the man open his mouth, I just went weak-kneed, got sick to my stomach. I just started shaking." (Crim. Docket Entry No. 53, pp. 197-98) When asked by the prosecution, "upon what basis did you identify that person?" Emerton replied, "[t]he minute he opened his mouth." (Crim. Docket Entry No. 53, pp. 197-98) On cross examination, Emerton again testified that her identification at the lineup was based on the movant's voice. (Crim. Docket Entry No. 53, p. 202)

Special Agent Whitten who, as previously mentioned coordinated the lineup, testified as follows about when Carr and Emerton heard the movant's voice:

> I was facing away from the two ladies. . . . And I heard someone inhale sharply. And I turned around, and I saw that Ms. Emerton appeared to be visibly shaken. She had – her demeanor had changed. Her body had slumped. It was apparent that she had a reaction. That occurred at the time when Mr. Young first started to speak. . . . It – both Ms. Carr and Ms. Emerton were shaken. Ms. Emerton was physically shaken, though. I could see her reaction.

(Crim. Docket Entry No. 53, p. 337)

It is apparent from the foregoing that Carr and Emerton identified the movant from the lineup from his voice. Thus, even if the lineup were improperly suggestive in every other way, which it was not, the identification was otherwise reliable under the totality of the circumstances.

For the reasons explained above, the movant cannot establish either half of the two-part test under *Ledbetter*. For the reasons explained, he also cannot satisfy either part the two-part test under *Strickland*. Accordingly, this claim should be denied.

### b. Failure to Request a Cautionary Instruction

The movant asserts that defense counsel were ineffective because they "failed to request a cautionary instruction when a witness identified [the movant] as the robber at trial by sight when the same witness had previously identified [the movant] at a line-up as the robber primarily by voice

identification." (Docket Entry No. 34, ¶ II.10.B.ii, p. 4)

The movant does not identify the witness(es) who made the in-court identification at issue,[7] he provides no argument in support of this claim he provides no references to the record, and he provides no citation to relevant authority. For these reasons, this claim also is conclusory. As previously established, conclusory claims do not provide grounds for federal *habeas corpus* relief. Once again, however, the undersigned will address the claim to the extent possible.

Although the movant does not identify the witness(es) at issue, it appears from the pleadings that this claim also pertains to the testimony of Carr and Emerton at trial when they referred to the robber's physical characteristics. (Crim. Docket Entry No. 53, pp. 196-98) As already discussed, *supra* at pp. 16-19, Carr and Emerton testified at trial that they identified the movant based on his voice. Because Carr and Emerton testified that they identified the movant based on his voice, the movant cannot establish that defense counsel's representation was deficient because they failed to request a cautionary instruction – there was nothing to caution the jury about.

In addition to failing to establish that defense counsel's representation was deficient, the movant also has failed to show that he was prejudiced. As shown below, defense counsel ably established that Carr identified the movant solely based on his voice:

> Q        Ms. Carr, I believe you testified just a few moments
>          ago that the only way that you were able to identify
>          my client –
>
> A        Right.

---

[7] In his response to the respondent's motion to dismiss, the movant identifies the witness as Melinda Kelly, who testified on direct examination that she could not positively identify the movant at the lineup as the robber (Crim. Docket Entry No. 52, pp. 119-120), but then at the conclusion of direct examination identified the movant as the person whom she identified at the lineup (Crim. Docket Entry No. 52, p. 121). (Docket Entry No. 180, ¶ H, pp. 20-22) This is not the same claim as the one in the movant's amended motion, which pertains to a witness who identified the movant at trial by sight, after having identified him by voice at the lineup. Because the claim raised in the movant's response to the government's motion to dismiss is an entirely new claim, it is barred by the AEDPA's one-year limitations period. The analysis that follows pertains to the claim as it appeared in the amended motion.

20

Q          – was by voice; is that right?

A          Yes.  Yes.

(Crim. Docket Entry No. 53, p. 183)  As shown below, defense counsel also clarified Emerton's

testimony on cross-examination:

A          I saw the stockings and the hat, but what I – I just
           concentrated on his arm.  And when his arm pulled
           the door open, I just knew my child was in my mind,
           I just had to do something with my child.[8]

Q          Yes, ma'am.  And was that immediate, that you
           immediately got your child under the desk?

A          Yes, I don't even remember doing it.

Q          Okay.  And I believe you even testified that you don't
           remember how you got under there; is that right?

A          I just know I got under there.

Q          Okay.  Okay.  And you never saw – you never had a
           visual image of the robber after you got under your
           desk, did you?

A          Just at the front door.

Q          Okay.  And that was just instantaneous at the front
           door?

A          Yes. . . .  I just was concentrating on getting my child
           somewhere.
                                    . . .

Q          And I believe you testified that your entire focus was
           on protecting your child?

A.         Yes.

---

    [8]  Emerton testified on direct examination that she shoved her little boy under her desk when the robber entered
the bank, and did not get out from under her desk until the robber had left.  (Crim. Docket Entry No. 53, pp. 193-95)

| Q | Now, Mr. Jones asked you if you recalled having participated in this lineup that the FBI had arranged? |
|---|---|
| A | Yes. |
| Q | You remember his asking you about that? And do you remember telling the FBI agent that you based you identification on all of the physical attributes that you had listed in talking with him? |
| A | Yes. |
| Q | So your identification was not based just on the voice, was it? |
| A | No. It was based on all those things. |
| Q | Okay. but you couldn't see all those things, could you? Because you saw nothing when you were under your desk, right? |
| A | All I know is the voice I remember hearing in the bank is the voice I heard during the lineup. |
| Q | Okay. And, of course, you're aware of – would you admit that many people have similar voices? |
| A | Yes, I would. . . . |

(Crim. Docket Entry No. 53, pp. 200-02)

For the reasons explained above, the movant cannot satisfy either part of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### c. Failure to Participate in the Lineup in a Meaningful Way

The movant asserts that defense counsel failed to "participate in the line-up in any meaningful way . . . ." (Docket Entry No. 34, ¶ II.10.B.iii, pp. 4-5; No. 180 ¶ I, p. 22)

As previously established, the lineup at issue occurred on August 11, 1999. The Grand Jury indicted the movant on February 9, 2000. (Crim. Docket Entry No. 1) The record shows that

22

counsel was assigned to represent the movant on March 9, 2000.

A person's right to counsel "attaches when adversary proceedings, triggered by the government's formal accusation of a crim, begin." *Texas v. Cobb*, 532 U.S. 162, 177 (2001)(citing *Brewer v. Williams*, 430 U.S. 387, 401 (1977); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *Massiah v. United States*, 377 U.S. 201, 206 (1964)). Adversary proceedings are deemed to have begun "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 187-188 (1984)(collecting cases).

It is apparent from the record that the lineup occurred well before adversary proceedings commenced against the movant. Consequently, even if the lineup had been unduly suggestive, the movant cannot premise an ineffective assistance claim on those facts because the right to counsel had not yet attached.

For the reasons explained above, the movant cannot establish that defense counsel were ineffective for failing to participate in the 1999 lineup in a meaningful way. Because the movant cannot satisfy both parts of the two-part test under *Strickland*, this claim should be denied.

### 9. Failure to Object to the Introduction of the Movant's Confession

The movant asserts that defense counsel were ineffective because they failed to object to the introduction of his confession to the September 16, 1998 Cash Express robbery in Sparta, Tennessee under Rule 404(b), Fed. R. Evid., and/or to seek to limit evidence of the confession to identification testimony. (Docket Entry No. 34, ¶ II.10.C, p. 5)

In his memorandum, the movant couches this claim in the context of *Brady*, noting that the district judge would have excluded the evidence at issue had it been aware of exculpatory evidence been withheld. (Docket Entry No. 180, ¶ J, pp. 22-23) The movant's argument in his memorandum is unrelated to, and does not support the claim as it is set forth in his second amended motion.

23

Absent any supporting argument in his memorandum, the movant's ineffective assistance claim in his second amended motion is conclusory, and subject to dismissal. The undersigned will address the claim nevertheless.

Defense counsel both noted in their affidavits that they filed a motion *in limine* to suppress evidence pertaining the Cash Express robbery. (Docket Entry No. 168, ¶ 31, p. 16; No. 169, ¶ 28, p. 16) That defense counsel did so is supported by the record in the movant's criminal case. (Crim. Docket Entry No. 17) Because defense counsel sought to exclude evidence of the movant's confession, their representation was not deficient on this point.

As to the question of prejudice, the district judge provided the following the instruction to the jury about the Cash Express robbery:

> You have heard testimony that the defendant committed some acts other than the ones charged in the indictment.
>
> You cannot consider this testimony as evidence that the defendant committed the crimes that he is on trial for now. Instead, you can only consider it in deciding the defendant's identify. Do not consider the Cash Express robbery for any other purpose.
>
> Remember, the defendant is on trial here only for the offenses charged in the indictment, not for the other act. . . .

(Crim. Docket Entry No. 54, pp. 513-14) The instruction above negated whatever prejudicial effect that introducing the movant's confession might have had.

For the reasons explained above, the movant cannot satisfy either part of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### 10. Failure to Provide the Movant
### with Copies of Discovery

The movant alleges that [n]otwithstanding counsel's in-custody conferences with [him]," defense counsel did not "provide [him] with a copy of the discovery materials," which were necessary for him to "intelligently assist with his defense at trial and to make an informed decision regarding a settlement offer." (Docket Entry No. 34, ¶ II.10.D, p. 5) In his memorandum, the movant expands this claim to include the allegation that defense counsel "did not review the discovery with [him] at any point prior to the trial." (Docket Entry No. 180, ¶ K, pp. 23-24)

Addressing first the movant's amendment to this claim, this is the first time he has alleged in these proceedings that defense counsel <u>never</u> reviewed discovery with him prior to trial. This claim is clearly different from the movant's original claim that defense counsel did provide him with copies of discovery to keep with him in jail. For the reasons previously explained, the movant's claim that defense counsel <u>never</u> discussed discovery with him prior to trial is barred by the AEDPA's one-year limitations period.

Regarding the claim as it was originally drafted, the only argument that the movant makes is that he could have pointed out differences in his mannerisms and appearance from those reported by witnesses. As any differences in the movant's mannerisms and appearance from the witness statements would have been self-evident, providing the movant with a personal file of discovery materials would have made no difference. Defense counsel's representation was not deficient, nor was the movant prejudiced, for the reason alleged.

For the reasons explained above, the movant cannot satisfy either half of the two-part test under *Strickland*. Therefore, this claim should be denied.

### 11. *Ex Parte* Communication Between Defense
### Counsel and the District judge

The movant asserts that defense counsel engaged in "improper and premature *ex parte* communication with the district judge regarding a possible motion to withdraw from the case for ethical reasons." (Docket Entry No. 34, ¶ II.10.E, p. 5; No. 180, ¶ L, pp. 24-25) According to the movant, this "inappropriate disclosure" was without his "presence or knowledge," thereby violating his ""Due Process and Right of Confrontation." (Docket Entry No. 34, ¶ II.10.E, p. 5) The movant asserts, moreover, that the district judge did not make a record of the communication; therefore, the prejudicial effect of the *ex parte* communication cannot be determined. (Docket Entry No. 34, ¶ II.10.E, p. 5)

The sole issue here is whether the *ex parte* communication between defense counsel and the district judge violated movant's right to due process/right of confrontation, because he was neither present at, nor aware of, the communication. The movant's claim that the prejudicial effect of the communication cannot be determined because there is no record of it appears to be an assertion that the communication under the facts alleged was prejudicial *per se.*

The movant does not cite to any authority, binding or otherwise, that establishes he had a right under the Constitution or laws of the United States to be present at/or aware of the *ex parte* meeting between defense counsel and the district judge. As to the due process part of his claim, although there is an abundance of case law that establishes that *ex parte* communications between the district judge and the prosecution and/or members of the jury is violative of due process, *see e.g., United States v. Barnwell*, 477 F.3d 844, 852-53 (6th Cir. 2007), the undersigned has found no case law that *ex parte* communications between defense counsel and the district judge does so.

As to the "confrontation" part of this claim, apart from alleging that his confrontation rights were violated, the movant does not explain how, or with respect to whom or what, his right to

Case 2:03-cv-00040   Document 189   Filed 03/13/09   Page 26 of 48 PageID #: 1066

confrontation was violated. Absent specifics, or factual allegations, this part of the claim is conclusory. As noted repeatedly throughout, conclusory allegations are insufficient.

As explained above, the movant has failed to establish that defense counsel's actions violated his rights. Therefore, he has failed to establish that their representation was deficient.

As to prejudice, the movant has not cited to any authority, nor has the undersigned's research revealed any, that the absence of a written record under the facts alleged constitutes prejudice *per se*. Moreover, the movant makes no effort to explain how defense counsel's actions prejudiced him. Instead, he asserts that "it is impossible to fairly and accurately evaluate the prejudicial effect of such communication." (Docket Entry No. 34, ¶ II.10.E, p. 5) As previously established, vague claims of this sort are insufficient.

For the reasons explained above, the movant has failed to establish either half of the two-part test under *Strickland*. Therefore, this claim should be denied.

### 12. Failure to Challenge the Prosecution's Expert Witness

The movant sets forth a five-part ineffective assistance claim pertaining to the testimony of William Frensley and Special Agent Doug Whitten. Specifically, the movant alleges that defense counsel provided deficient representation because they failed to: 1) request a hearing to qualify Frensley as an expert in photographic comparison (Docket Entry No. 34, ¶ II.10.F.i, p. 5); 2) raise a *Daubert* challenge as to Frensley's photographic comparison testimony (Docket Entry No. 34, ¶ II.10.F.ii, pp. 5-6); 3) raise a *Daubert* challenge regarding Frensley's fabric analysis testimony (Docket Entry No. 34, ¶ II.10.F.iii, p. 6); 4) raise a *Daubert* challenge to Frensley's testimony about fluid stain analysis (Docket Entry No. 34, ¶ II.10.F.iv, p. 6); 5) cross-examine Frensley about the underlying facts and/or data pursuant to Rule 705, Fed. R. Evid. (Docket Entry No. 34, ¶ II.10.F.v, p. 6); 6) assert a *Daubert* challenge to and/or challenge under Rule 701, Fed. R. Evid. concerning Special Agent Whitten's testimony about fluid stains, boots, footprints, upper-body clothing, facial

appearances, and mannerisms of the robber (Docket Entry No. 34, ¶ II.10.F.vi, p. 6).

### a. Frensley's Testimony

The movant alleged the five ineffective assistance claims – enumerated 1) through 5) above – in his second amended motion. However, the movant provides no factual allegations in support of these claims in his second amended motion. Moreover, in his memorandum, the movant addresses the claim solely in the context of Special Agent Whitten's testimony. (Docket Entry No. 180, ¶ M, pp. 25-29) The movant's only reference to Frensley's testimony in his memorandum is to show that, based on Frensley's expert testimony, defense counsel should have challenged Special Agent Whitten's testimony. (Docket Entry No. 180, ¶ M, pp. 28-29)

Apart from the movant's unsupported claims in his second amended motion, the movant has provided no factual allegations whatsoever in support of this part of this ineffective assistance claim as it pertains to Frensley. Thus, claims 1) through 5) above, both individually and collectively, are conclusory. As previously established, more than conclusory allegations are required to be entitled to federal *habeas corpus* relief.

The movant has failed to establish either part of the two-part test under *Strickland*. Therefore, the movant's claim pertaining to Frensley's testimony should be denied.

### b. Special Agent Whitten's Testimony

The movant couches this part of this ineffective assistance claim in his second amended motion in the context of defense counsel's failure to raise a *Daubert* challenge to Special Agent Whitten's testimony about the "fluid stain, the boots and footprint, the upper-body clothing, the facial appearance, and the manner in which the robbers held their firearms and cupped their ears." (Docket Entry No. 34, ¶ II.10.F.vi, p. 6) Special Agent Whitten testified at trial as the FBI's "case agent" responsible for investigating the five bank robberies for which the movant was tried. (Crim. Docket Entry No. 53, p. 280) The prosecution did not proffer Special Agent as an expert.

28

The movant provides no factual allegations in his second amended motion in support of this claim. In his memorandum, the movant only provides facts pertaining to Special Agent Whitten's testimony about the plaid shirt and the boots/footprint. Absent any supporting facts, and for reasons previously explained, this claim is conclusory to the extent that it pertains to Special Agent Whitten's testimony about fluid stains, facial appearances, and the robber's mannerisms.

Turning to the plaid shirt worn seized from the movant, the movant asserts that "Special Agent Whitten clearly testified to matters that should have been left to a qualified expert." (Docket Entry No. 180, ¶ M, p. 28) More particularly, the movant asserts that "Agent Whitten's testimony went from lay witness to expert witness when he testified that he laid the shirt on the ground, compared the shirt and the photo, and they appeared to match." (Docket Entry No. 180, ¶ M, p. 28) According to the movant, defense counsel should have raised a *Daubert* challenge as to Special Agent Whitten's testimony.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the district judge has a special obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. *Daubert* sets forth a non-exclusive checklist of factors for trial courts to use in assessing the reliability of scientific expert testimony. These include 1) whether the expert's scientific technique or theory can be, or has been, tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community. *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004)(citing *Daubert*, 509 U.S. at 592-95); *Hardyman v. Norfolk & W. Ry.*, 243 F.3d 255, 260 (6th Cir.2001)).

The movant asserts that Special Agent Whitten testified that he "laid the shirt on the ground,

29

compared the shirt and the photo, and they appeared to match." (Docket Entry No. 180, ¶ M, p. 28)

Special Agent Whitten actually testified as follows:

> I took the shirt after we had recovered it and stretched it out, laid it down on the floor, took the photograph, put beside it and just examined where the light spots were, where the dark spots were, as best I could with my eyes.

> And it appeared that this shirt matched in terms of being light in the correct places and dark in the correct places to be consistent with the shirt worn here in the robbery.

(Crim. Docket Entry No. 53, pp. 316-17)  Comparing a plaid shirt with a photograph, and determining visually that the light and dark spots corresponded, is scarcely the stuff of science, nor does it require establishing applicable scientific technique/theories, peer review and acceptance, probability of error, standards and controls, etc..

The remaining part to this claim that is not conclusory is that defense counsel were ineffective for not raising a *Daubert* challenge to Special Agent Whitten's testimony, comparing boots and a footprint recovered by law enforcement.  The movant asserts that the following testimony should have prompted defense counsel to raise a *Daubert* challenge:

> I just took the intact cast and the boots and put them together to see if they overlapped and if there were any obvious inconsistencies.  The cast appeared to have been made by a boot that was approximately the same size and shape as these boots.  There wasn't any discernable difference.

(Docket Entry No. 180, ¶ M, p. 29)  The movant asserts further that Special Agent Whitten testified that he compared the boots with a photograph of boots worn by the robber, and concluded that "the boots in the photo had 'the same apparent [*sic*] general apparent color." (Docket Entry No. 180, ¶ M, p. 20)  Special Agent Whitten's actual testimony is as follows:

> I took the boot, itself, and put it next to the photograph.  And what I observed was that it had the same general apparent color.  Here again, these are not colored photographs.  Also, the general shape of it was consistent with the boot that I had obtained from  Mr. Young's residence. . . .  And specifically, this V-shape formation, right here in the top of the boot, is

30

consistent with the V-shape formation of this boot.

(Crim. Docket Entry No. 53, p. 325)  Once again, Special Agent Whitten's visual observations of the physical evidence was scarcely the stuff of science to which *Daubert* applies.

For the reasons explained above, defense counsel's representation was not deficient because they did not raise a *Daubert* challenge to Special Agent Whitten's testimony about the shirt, footprint, and boots.

The movant also has failed to establish that he was prejudiced by Special Agent Whitten's testimony for the following reasons.  First, the movant does not allege in either his second amended motion, or his memorandum, that Special Agent Whitten's testimony concerning the shirt prejudiced him.  Even assuming that Special Agent Whitten's testimony was prejudicial, Frensley – who was called after Special Agent Whitten – testified that there was insufficient detail in the photograph of the shirt to conclude that the shirt was the same one worn by the robber.  (Crim. Docket Entry No. 54, p. 432)  Thus, any prejudice that may have resulted from Special Agent Whitten's testimony was put right by Frensley – the "expert" identified as such by the movant in his memorandum.

Second, although the movant asserts that he was prejudiced by Special Agent Whitten's testimony about the boots (Docket Entry No. 180, ¶ M, p. 29), he makes no effort to explain how he was prejudiced.  In any event, the movant himself says that Frensley testified later that no definitive conclusion could be drawn from a comparison of the photographs and the boots (Crim. Docket Entry No. 54, p. 430).  Once again, any prejudice that may have resulted because Special Agent Whitten's testimony was nullified by Frensley – the "expert."[9]

As reasoned herein, the movant has failed to establish either part of the two-part *Strickland* inquiry with respect to this claim.  Accordingly, this claim should be denied.

_____

[9]  Despite the opportunity to have the physical evidence examined by his own expert, the movant has given absolutely no indication that further expert examination of the physical evidence would have aided his cause.

31

### 13. Failure to File a Motion Under Rule 16(a)(1)(G), Fed. R. Crim. P.

The movant alleges that defense counsel's representation was deficient because they did not file a motion under Rule 16(a)(1)(G) requiring the government to file a summary of their experts' opinions, the "bases and reasons for those opinions," and the witnesses' qualifications. (Docket Entry No. 34, ¶ II.10.G, p. 6)  According to the movant, failure to file a motion under Rule 16(a)(1)(G) prevented the defense from "uncover[ing] prosecution expert opinions which would have been favorable to the defense." (Docket Entry No. 34, ¶ II.10.G, p. 6)

In his memorandum, the movant argues that, because defense counsel did not review discovery with him, it cannot be determined whether Frensley's report was turned over the defense counsel in a timely manner.  The movant also argues that defense counsel did not retain or call defense experts who might have been able to rebut the testimony of Agents Frensley and Whitten. (Docket Entry No. 180, ¶ N, pp. 29-30)

The claim before the Court is that defense counsel did not file a motion under Rule 16(a)(1)(G).  The issue is not when defense counsel received Agent Frensley's report, whether defense counsel reviewed discovery with the movant, or whether/why defense counsel failed to retain its own experts.  Moreover, the movant does not allege that he was prejudiced by defense counsel's failure to file a motion under Rule 16(a)(1)(G), *i.e.*, that had defense counsel filed the motion, a reasonable probability exists that the result of his trial would have been different.[10]

The movant has failed to support this claim with argument/facts germane to the issue.  The movant also does not assert that he was prejudiced by defense counsel's alleged failure to file a motion under Rule 16(a)(1)(G).  Because the movant has failed to satisfy either part of the two-part test under *Strickland*, this claim should be denied.

---

[10] Despite the opportunity to have the physical evidence examined by his own expert, the movant has given absolutely no indication that further expert examination of the physical evidence would have aided his cause.

### 14.  Failure to Subpoena the Prosecution's Forensic Expert

The movant alleges that defense counsel's representation was deficient because they did not subpoena the prosecution's "forensic expert witness." (Docket Entry No. 34, ¶ II.10.H, p. 6)  In not subpoenaing the prosecution's expert, the movant maintains that defense counsel "fail[ed] to prove prosecution expert opinions which would have been favorable to the defense."  (Docket Entry No. 34, ¶ II.10.H, p. 6)  In his memorandum, the movant adds:

> Even if there were no other witnesses that the government intended to call, a subpoena would have fleshed out this fact and would have allowed defense counsel to go into the trial with something other [*sic*] and a general idea who might be called to testify.

(Docket Entry No. 180, ¶ O, p. 30)

The movant has not provided any argument/factual allegations that are germane to this claim. Neither has he provided any references to the record, citation to relevant authority, or examples where the prosecution's expert witness testimony might be challenged.  Finally, the movant does not allege that he was prejudiced by defense counsel's alleged failure, *i.e.*, that had they subpoenaed the prosecution's expert witnesses, that a reasonable probability exists that the results of his trial would have been different.[11]

The movant has failed to establish either half of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### 15.  Failure to Object to the Prosecution Eliciting Testimony From the Bank Tellers About the Emotional Impact of the Robberies on Them

The movant alleges that defense counsel's representation was deficient because they failed to object to instances during the government's case in chief when the prosecution elicited evidence

---

[11]  Despite the opportunity to have the physical evidence examined by his own expert, the movant has given absolutely no indication that further expert examination of the physical evidence would have aided his cause.

from victims as to the emotional harm that they had suffered as a result of the robberies. (Docket Entry No. 34, ¶ II.10.I, p. 6; No. 180, ¶ P, pp. 30-34)

According to the movant, "this testimony was so egregious that the court itself finally admonished the [government] to cease eliciting testimony of that sort . . ." (Docket Entry No. 34, ¶ II.10.I, p. 6) In his memorandum, the movant asserts that the testimony was not required to prove the elements of the offenses charged, that the testimony was objectionable, that the failure to object fell below the legal standard for criminal defense attorneys, and that "[t]he prejudice perhaps can never fully be quantified . . . ." (Docket Entry No. 180, ¶ P, p.34)

The record shows that the prosecution questioned twenty-seven (27) witnesses, seventeen (17) of whom were tellers on duty in the banks that were robbed, and of those, the prosecution elicited testimony from five (5) of them pertaining to the psychological/emotional effect that the robberies had on them.[12] It was following Carr's testimony that the district judge raised *sua sponte* her concern with the potentially prejudicial nature of such testimony, in response to which the prosecution agreed not to solicit further such testimony, or raise such evidence in closing. (Crim. Docket Entry No. 53, pp. 185-86)

In their affidavits, defense counsel both stated that they did not object for tactical reasons. (Docket Entry No. 168, ¶ 37, pp. 21-22; No. 169, ¶ 34, pp. 21-22) More particularly, both attorneys stated that:

> As a matter of trial tactics, I did not believe it was in the interest of Mr. Young . . . to object to this testimony before the district court raised the issue. I believe [that] objections may have caused the jury to infer that Mr. Young had something to hide regarding the emotional harm that the victim bank tellers obviously had suffered.

---

[12] The testimony at issue was provided by: Jennifer Storie (Crim. Docket Entry No. 52, p. 44), Melinda Kelly (Crim. Docket Entry No. 52, p. 120), Marlette Stephens (Crim. Docket Entry No. 53, pp. 139-40), Judy Carney (Crim. Docket Entry No. 53, p. 148), and Beth Carr (Crim. Docket Entry No. 53, pp. 182-83).

34

(Docket Entry No. 168, ¶ 37, p. 22; No. 169, ¶ 34, pp. 21-22)  Defense counsel's tactics were obviously apparent to the district judge, when she stated: "I know what your defense is.  And, therefore, I can understand why you have not objected, but do feel free to make those objections out of the presence of the jury."  (Crim. Docket entry No. 53, p. 186)  The undersigned agrees that, where the defense is that the movant did not commit the crime, objections of this nature could cause more harm than good with the jury. Except as to matters of identity, the victim tellers would reasonably be treated gently by defense counsel.

In assessing attorney performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690-91.  However, "even deliberate trial tactics may constitute ineffective assistance of counsel if they fall 'outside the wide range of professionally competent assistance.'" *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Assuming for the sake of argument that defense counsel's failure to object fell outside the range of competent assistance, the movant has failed to establish that he was prejudice for the following reasons.  First, the movant asserts only that "[t]he prejudice . . . can never fully be quantified."  The movant must at least make an effort to show how he was prejudiced.  The movant makes no effort to do so, and it is not the Court's responsibility to do so for him.

Second, as the movant states, the testimony at issue did not have "any relation to the required elements that the government [was required to] prove in this case."  (Docket Entry No. 180, ¶ P, p. 32)  In her instructions to the jury, the district judge clearly set forth the elements of the offenses that the jury had to find to find the movant guilty.  (Crim. Docket Entry No. 54, pp. 505-14)  The emotional affect of the crimes on the victims was not an element of those offenses.

Third, the district judge instructed the jury: "Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way."  (Crim. Docket Entry

35

No. 54, p. 494)  Juries are presumed to follow the instructions of the trial court.  *See Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987)(citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001).  It may, therefore, be presumed the jury did not consider any "sympathy" that they may have felt for the five tellers from whom the testimony at issue was adduced.

Finally, as already noted, the prosecution called 27 witnesses during the three-day trial.  The offending testimony constituted a scant few lines of testimony in the 500-plus page transcript of those proceedings. The offending testimony was not so "egregious" as the movant maintains.

The movant has failed to establish both parts of the two-part test under *Strickland* with respect to this claim.  Therefore, this claim should be denied.

### 16.  Failure to File a Notice of Alibi

The movant asserts that defense counsel failed to file a notice of alibi even though he had advised defense counsel that he had an alibi for one of the five robberies, and that defense counsel failed to call his alibi witness – Donnie Richards – even though Richards was in court throughout the trial, and prepared to testify.  (Docket Entry No. 34, ¶ II.10.J, p. 7)  The movant's theory is that, because the "charges were tried together . . . if [he] was proven not to have committed one, it would have had a significant impact on the prosecution's theory . . . ."  (Docket Entry No. 34, ¶ II.10.J, p. 7)

The substance of this claim is materially indistinguishable from the movant's earlier alibi claim.  For the reasons previously explained, *supra* at pp. 13-14, this claim should be denied.

### 17.  Failure to Move for Severance

The movant alleges that defense counsel's representation was deficient because they did move to sever the offenses under Rule 14, Fed. R. Crim. Pro.  (Docket Entry No. 34, ¶ II.10.K, p. 7)  In his memorandum, the movant argues that the robberies were not related "except through some

36

similarities that [he] would contend are in common in all bank robberies . . . ." (Docket Entry No. 180, ¶ R, pp. 35-36)

Under Rule 8(a), Fed. R. Crim. P., a criminal defendant may be charged for multiple offenses in a single indictment "if the offenses charged . . . are of the same or similar character . . . or are connected with or constitute parts of a common scheme or plan." Under Rule 14(a), Fed. R. Crim. P., "if the joinder of offenses . . . for trial appears to prejudice the defendant . . . the court may order separate trials of counts . . ."

It is clear from the record that the five armed robberies for which the movant was convicted were the same or similar in character, and that they were a all part of a common scheme or plan.[13] Trying the offenses together was entirely proper under Rule 8(a). Thus, defense counsel's decision not to move to sever the offenses does not constitute deficient representation.

The movant also does not argue that he was prejudiced by trying the charges together, only that defense counsel did not file a motion to sever. Given that a motion to sever would have lacked merit, failure to file the motion did not prejudice the movant.

As reasoned above, the movant has failed to establish either part of the two-part test under *Strickland*. Therefore, this claim should be denied.

### 18. Failure to Object to the Jury Charge That Described Several of the Individual Charges as Linked Together

The movant alleges that defense counsel were ineffective because they "failed to object to the jury charge which described several of the individual charges as 'linked together.'" (Docket Entry No. 34, ¶ II.10.L, p. 7)

According to the movant, the instruction "created the perception in the minds of the jury that

---

[13] The undersigned will not repeat here the government's well-pled argument on these points. (Docket Entry No. 172, ¶ I.R, pp. 43-46)

Case 2:03-cv-00040   Document 189   Filed 03/13/09   Page 37 of 48 PageID #: 1077

if [he] was found guilty of one offense he must be guilty of the others." (Docket Entry No. 34, ¶ II.10.L, p. 7) In his memorandum, the movant argues only that "[w]e would rely on the arguments set out in our Second Amended and Supplemental Petition," and that "[t]he jury charge and the verdict form speak for themselves . . . ." (Docket Entry No. 180, ¶ S, p. 36)

The movant has failed to provide a reference to the record with respect to his claim; however, it appears that the following instruction is the subject of the first part of this claim:

> [I]f you find the defendant not guilty on Count One, you must also find him not guilty on Count Two, which charges that use – that he was using or carrying a firearm during and relation to the commission of a crime of violence.
>
> Counts One and Two **are linked together**, in other words. If you find him not guilty on County One, you have to find him not guilty on Count Two.
>
> If you find him guilty on Count One, you proceed to deliberate on whether or not he's guilty on Count Two. And that is using or carrying a firearm during and in relation to the commission of a crime of violence.
>
> And then it goes on with respect to each of the five bank robberies charged and then the armed – carrying the firearm in the commission of a crime of violence that is linked to that bank robbery.

(Crim. Docket Entry No. 54, pp. 517-18)(emphasis added)

Notwithstanding the movant's strained reading of the phrase, "linked together," the trial court's explanation is clear on it's face. The district judge instructed the jury to consider one robbery charge at a time. If the jury determined that the defendant was not guilty of on a specific robbery charge then, by definition, he was not guilty of the corresponding weapons charge. If the jury found the defendant guilty of a specific robbery charge, then the jury must consider the corresponding weapons charge. That the jury would have construed the trial court's instruction as interpreted above is supported by the early instruction, in which the district judge stated:

> It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one. . . . For each charge,

38

you must decide whether the United States has presented proof beyond a
reasonable doubt that the defendant is guilty of that particular charge. . . .
Your decision on one charge, whether it is guilty or not guilty, should not
influence your decision on other charges.

(Crim. Docket Entry No. 54, p. 503)

The movant has failed to establish either part of the two part test under *Strickland*.

Accordingly, this claim should be denied.

### 19.  Failure to Object to the Verdict Form That Instructed the Jury
### That, If the Movant Was Found Not Guilty of The
### Bank Robbery Charges, He Could Not Be
### Guilty of the Gun Charges

The movant asserts that defense counsel's representation was deficient because they did not

"object to the verdict form that instructed them that if Mr. Young was found not guilty of the bank

robbery charges, he could not be guilty of the gun charges."  (Docket Entry No. 34, ¶ II.10.M, pp.

7-8; No. 180, ¶¶ S, VI, pp. 49-50)

According to the movant, "[t]his form is confusing and could have created the erroneous

belief in the minds of the jurors that if Mr. Young was guilty of the bank robberies he also had to

be found guilty of the gun charges."  (Docket Entry No. 34,¶ II.10.M, p. 7)  Although the movant

has, once again, not provided any reference to the record, it appears that the following instruction

on the jury form is the instruction at issue:

Note: If you found the Defendant 'Not Guilty' in response to Question No.
1 (Count One of the Indictment), you must also find him 'Not Guilty' of
Count Two of the Indictment.  If you answered 'Not Guilty' in response to
Question No. 1, indicate 'Not Guilty' in response to Question No. 2.

(Crim. Docket entry No. 37, p. 1)  The instruction is then repeated for each of the other robbery and

weapons charges.  (Crim. Docket Entry No. 37, pp. 2-5)

The instruction at issue  is crystal clear, and would not confuse anyone who could pass

muster to serve as a juror.  Defense counsel were not deficient in their representation, nor was the

39

movant prejudiced, because defense counsel did not object to this instruction. Indeed, it would take an extraordinary attorney to object to this instruction with a straight face.

The movant has failed to establish either part of the two-part test under *Strickland*. Accordingly, this claim should be denied.

### 20. Collective Allegation of Ineffective Assistance

The movant asserts that the aforementioned ineffective assistance claims, when considered collectively, entitle him to *habeas corpus* relief. (Docket Entry No. 34, ¶ II.10.N, p. 8, No. 180, ¶ T, pp. 36-37) For the reasons explained herein, none of the movant's ineffective assistance claims has any merit. The sum total of the movant's numerous meritless ineffective assistance claims is the same – no merit. This claim should be denied.

### 21. Improper *ex Parte* Communications Between
### Defense Counsel and the District judge

The movant asserts that the *ex parte* communication between defense counsel and the district judge was constitutionally improper, this time apparently in the context of trial court error. (Docket Entry No. 34, ¶ II.11, p. 8; No. 180, ¶ U, p. 37) The factual allegations that pertain to this claim are as previously set forth, *supra* at pp. 26-27, in the context of the movant's related ineffective assistance claim. The government argues that this claim is procedurally defaulted. (Docket Entry No. 172, ¶ II, pp. 49-50)

As previously noted, *supra* at p. 1, the movant appealed his convictions. The movant could have – and should have – raise this claim on direct appeal. He did not.

A movant's failure to raise a claim on direct appeal results in the procedural default of that claim on *habeas corpus* review. *See Bousley v. United States*, 523 U.S. 614, 612 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.2003)(citing *Bousley*, 523 U.S. at 622) "Cause" in the context of procedural default ordinarily turns on whether the movant can show that some objective factor external to him impeded his ability to raise the claim on appeal. *Murray v. Carrier*, 477 U.S. 478 (1986). To satisfy the prejudice half of the two-part analysis, the movant must demonstrate actual "prejudice," not merely a possibility of prejudice. *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986). "Actual innocence" means factual innocence. *Bousley*, 523 U.S. 623.

The movant makes no effort to establish "cause" and "prejudice." Neither does he allege that he is "actually innocent" of the crimes for which he was convicted. Therefore, this claim should

Case 2:03-cv-00040   Document 189   Filed 03/13/09   Page 41 of 48 PageID #: 1081

be denied as procedurally defaulted for purposes of federal *habeas corpus* review.

### 22. Constitutionality of the Jury Charge and Related Verdict Form

The movant asserts that the jury charge and verdict form, previously addressed *supra* at pp. 37-39, were unconstitutional, this time in a context other than ineffective assistance of counsel. (Docket Entry No. 34, ¶ II.12, p. 8; No. 180, ¶ U, p. 37)  For the reasons explained in the preceding claim, this claim should be denied as procedurally defaulted for purposes of federal *habeas corpus* review.

### 23. Improper sentence Enhancement Under § 924(c)(1)(C)

The movant asserts that his sentence was improperly enhanced under 18 U.S.C. 924(c)(1)(C). (Docket Entry No. 34, ¶ II.13, p. 9; No. 180, ¶ U, p. 37)  The movant raised this claim previously, and it was dismissed as procedurally defaulted.  (Docket Entry No. 39, p. 6)  This claim should be denied as previously decided.

### 24. Movant's Claims under *Brady v. Maryland*[14]

The movant asserts that his Fifth Amendment rights were violated because the prosecution "failed to provide his trial counsel with materials to which he was entitled . . . ."  (Docket Entry No. 34, ¶ II.14, pp. 10-11; No. 180, ¶ V, pp. 37-49)  More particularly, the movant asserts that, "among other things," the prosecution suppressed four specific pieces of evidence pertaining to the March 11, 1998 robbery of the Regions Bank in Livingson, Tennessee.  (Docket Entry No. 34, ¶ II.14, p. 10)  The evidence at issue is: 1) that of an unidentified gray-haired man – not the movant – who sought change for a large denomination bill at the nearby First National Bank of the Cumberlands shortly before the Regions Bank was robbed (Docket Entry No. 34, ¶ II.14.i, p. 10); 2) witness

---

[14] The movant raises this claim under both *Brady v. Maryland* and *Kyles v. Whitley*.  Because the movant does not explain how these two Supreme Court cases differ in the context of this claim, the undersigned analyzes this claim only under *Brady*, which controls where suppression of evidence is alleged.

statements from the Regions Bank Robbery that the robber had long or bushy gray sideburns (Docket Entry No. 34, ¶ II.14.ii, p. 10); 3) reports that the tellers from the Regions Bank were exposed to media coverage pertaining to the robber (Docket Entry No. 34, ¶ II.14.iii, p. 10); 4) the statement of a witness to the Regions Bank robbery that the movant was armed with a Smith and Wesson .357 caliber revolver with a red dot on the front sight (Docket Entry No. 34, ¶ II.14.iv, pp. 10-11).[15] The movant argues in the alternative that, if it is determined that there is no *Brady* violation, then defense counsel's failure to uncover this evidence gives rise to an ineffective assistance of counsel claim. (Docket Entry No. 34, ¶ 14, p. 11)

### a. Movant's *Brady* Claim

"[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material to guilt or punishment . . . ." *Brady*, 373 U.S. at 87. There are three elements in a true *Brady* violation: 1) the evidence at issue must be favorable to the accused because it is either exculpatory or impeaching; 2) the evidence must have been suppressed by the government, either willfully or inadvertently; 3) prejudice to the defendant must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

A *Brady* violation requires more than the suppression of evidence favorable to the defense. *United States v. Ross*, 245 F.3d 577, 584 (6th Cir. 2001). The movant has a constitutional remedy only if he can show that the result of the trial would have been different, *i.e.*, that he was prejudiced. *Kyles*, 514 U.S. at 433; *Campbell v. Coyle*, 260 F.3d 531, 559 (6th Cir. 2001). To establish prejudice under *Brady*, the movant must show that the suppressed favorable evidence was "material."

---

[15] In the government's memorandum in support of its motion to dismiss, the government identifies the matter of Wayne Breeding, discussed *supra* at pp. 10-12, as an example of other false leads that investigators pursued, or examples of requests for admissions propounded by the movant. (Docket Entry No. 172, pp. 66, 77) The movant does not raise a claim under Brady pertaining to Breeden, nor has he sought to amend his pleadings to add one. In his memorandum, the movant refers to Breeden as having been brought up by the government. (Docket Entry No. 180, p. 41) From this, the undersigned concludes that the movant did not intend to amend his Brady claim to include a claim pertaining to Breeden.

43

Evidence is material, and thus constitutional error results from its suppression, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)(citing *Sticker*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)(quoting *Bagley*, 473 U.S. at 682. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Srickler*, 527 U.S. at 289-90 (quoting *Kyles* 514 U.S. at 434).

### 1. Whether the Evidence at Issue was Suppressed

The government concedes that it did not disclose the "other man" evidence. (Docket Entry No. 172, ¶ V.A, p. 64) Although defense counsel both state in their affidavits that it was "conceivable" that they could have discovered the incident through their own investigation (Docket Entry No. 168, ¶ 42, pp. 24-25; No. 169, ¶ 39, pp. 24-25), the undersigned concludes that this evidence was suppressed within the meaning of *Brady*.

The government avers that it provided defense counsel with the witness statements that described the robber has having long or bushy gray sideburns, and that defense counsel both aver that they were aware of those statements. (Docket Entry No. 42; No. 168, ¶ 43, pp. 25-26; No. 169, ¶ 40, pp. 25-26; No. 172, ¶ V.B, pp. 68-69) The movant does not challenge the government's response with respect to this evidence. Therefore, the undersigned concludes that this evidence was not suppressed within the meaning of *Brady*.

The government avers that it provided defense counsel with the reports prepared by Special Agent Whitten pertaining to the two tellers from the Regions Bank robbery having been exposed to media reports. (Docket Entry No. 42; 172, ¶ V.C, pp. 69-71) Although defense counsel do not

44

mention whether they received the evidence at issue, the movant once again has not challenged the government's assertion that they disclosed this evidence. Accordingly, the undersigned concludes that this evidence was not suppressed.

The final evidence at issue pertains to Jeffrey Lynn Emerton's statement to the FBI that the robber carried a Smith and Wesson .357 caliber revolver with a red dot on the front sight.[16] (Docket Entry No. 170) A .38 caliber Colt revolver was seized from the movant. Although defense counsel attest that they could have determined this evidence during witness interviews, they did not. Therefore, the undersigned concludes that this evidence was suppressed within the meaning of *Brady*.

## 2. Whether the Suppressed Evidence Was Material

Determining materiality under *Brady* does not use a sufficiency of the evidence test. *Kyles*, 514 U.S. at 434-35. In examining whether suppressed evidence is "material" for *Brady* purposes, a court must consider the suppressed evidence collectively, not item by item. *Kyles*, 514 U.S. at 436-437; s*ee Schledwitz v. United States*, 169 F.3d 1003, 1012 (6th Cir. 1999); *see also Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir. 2003). The two items of suppressed evidence, *i.e.*, the "other man" and "different-gun" evidence, both pertain to the March 11, 1998 robbery of the Regions Bank in Livingson, Tennessee.

As previously discussed throughout, Carr and Emerton both testified that they identified the movant in a lineup by his voice, not from his physical characteristics. The evidence of an unidentified gray-haired man seen at a nearby bank prior to the Regions Bank robbery would not have undermined Carr's and Emerton's testimony. Moreover, given the abundance of direct and circumstantial evidence that established the movant as the robber, discussed herein, it is even more

---

[16] The actual FBI report says "front side." For the purpose of this analysis, the undersigned takes this as a type-o, and that the report should have said "front sight."

unlikely that the "other man" evidence would have made much, if any difference, to the jury. Finally, with all of the identity evidence arrayed against the movant, it is just as unlikely that the jury would have given much credence to testimony that the revolver carried by the robber was a .357 magnum with a red dot on the front sight, and not a .38 caliber Colt, from a man who was being held at gunpoint by an armed robber, all while his wife and son cowered under a desk nearby.

Although there is no question that the prosecution was remiss in not disclosing this evidence to the defense, there also is no question that, had this evidence been disclosed, the result of the proceeding would <u>not</u> have been different. In other words, given the strength of the case against the movant, the suppressed evidence – viewed collectively – was not material.

For the reasons explained above, the movant is not entitled to relief under *Brady*. Therefore, the movant's *Brady* claim should be denied.

### b. Movant's Alternative Ineffective Assistance Claim

The evidence that constitutes the movant's alternative ineffective assistance claim pertains to witness statements that described the movant as having bushy gray sideburns, and reports attributable to Special Agent Whitten that Carr and Emerton had been exposed to media reports prior to identifying the movant at the 1999 lineup. Both pertain to the March 11, 1998 Regions Bank robbery. The undersigned assumes for the sake of discussion that defense counsel's representation was deficient for not presenting this evidence.

For the reasons stated repeatedly herein, evidence that the robber had bushy sideburns – or not – would not have made a difference in the case against the movant for the Regions Bank robbery. As to evidence that Carr and Emerton were exposed to media reports prior to identifying the movant at the lineup, both Carr and Emerton identified the movant from the lineup because of his voice. The movant does not assert, nor can it be inferred from anything in the record, that the media described the robber as having a distinctive voice. For these reasons, the movant cannot

46

establish that he was prejudiced because defense counsel did not uncover this evidence.

The movant cannot establish both halves of the two-part test under *Strickland*. Accordingly, this claim should be dismissed.

### 25. Movant's Claims Under *Castillo v. United States*

The movant asserts that his sentence was imposed in violation of *Castillo v. United States*. (Docket Entry No. 34, ¶ II.15, p. 11, No. 180, ¶ VI, pp. 49-50)  The movant has raised this claim previously, and it was dismissed as procedurally defaulted.  (Docket Entry No. 39, p. 6)  Accordingly, this claim should be denied as previously decided.

## III.  CERTIFICATE OF APPEALABILITY

If the district court denies a ground for relief in a *habeas corpus* action, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The undersigned has independently considered each of the movants claims, and concludes that a COA should not issue on any of them.

## IV.  RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that the respondent's motion to dismiss (Docket Entry No. 166) be **GRANTED**, that the amended motion (Docket Entry No. 34) be **DENIED**, that this action be **DISMISSED** with prejudice, that any appeal **NOT** be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith, and that a COA **NOT** issue on any claim.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from service of this R&R within which to file with the district court any written objections to the proposed findings and recommendations made herein.  Any party opposing shall have ten (10) days

47

from receipt of any objections filed regarding this R&R within which to file a response to said objections.  Failure to file specific objections within the time frames specified may constitute a waiver of further appeal of this R&R.  *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

      **ENTERED** this the 13th  day of March, 2009.

                        Joe B. Brown
                        Magistrate Judge